## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

JEAN ELIZABETH KAUFMAN,           )
                                  )
      Plaintiff,              )
                                  )
v.                                )          **CIVIL ACTION NO. 1:12-0237**
                                  )
UNITED STATES OF AMERICA,         )
                                  )
      Defendant.              )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is the United States' Motion for Summary Judgment (Document No. 37.), filed on August 9, 2013. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States in moving to dismiss. (Document No. 39.) On December 2, 2013, Plaintiff filed her Response in Opposition.[1] (Document No. 47.) The United States filed its Reply on December 3, 2013. (Document No. 48.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion should be denied.

### FACTUAL AND PROCEDURAL HISTORY

1.      **Civil Action No. 1:10-0071:**

On January 25, 2010, Plaintiff, formerly an inmate at FPC Alderson, and acting *pro se*, filed

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

her Complaint claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Civil Action No. 1:10-

0071, Document No. 1.) Plaintiff named the following as Defendants: (1) Correctional Officer H.

Baynard, and (2) FPC Alderson. (Id.) In her Complaint, Plaintiff alleged as follows:

> On January 28, 2008, I was assaulted by Officer H. Baynard. I was waiting
> in line at the dining hall. Inmate Brandy Stevens was in front of me and she went
> through the door that Baynard was holding open. Baynard began yelling at her that
> she entered the wrong door and demanded that she come back out of the building and
> go back through the other door. Neither door was marked enter or exit. I waited for
> Stephens to come back around and mumbled to her 'that was real important.'
> Baynard heard what I said to her and yelled at me, demanding my ID. He then
> ordered me to report to the Lieutenant's office after the meal. He instructed me to get
> back in line and I complied. Immediately, Baynard called me back over to the
> entrance and ordered me outside. As I walked outside he was screaming obscenities
> and threatening me. Quietly and without animosity, I said that he was speaking to me
> disrespectfully and to please stop. He then ordered, 'fine, put your hands on the
> wall.' I complied and C.O. Baynard began roughly searching me. He continued to
> strike at my pockets where I had paper. I turned my head to the right and told him
> that I wanted to speak to Captain DuPuis. Suddenly I was slammed into the wall
> repeatedly. I lifted my hands above my head and cried out 'Stop touching me! I want
> to see the Captain. Stop touching me!' He continued to slam me against the wall. He
> then grabbed my arm and neck and swung me around to face the opposite direction
> and slung me onto the ground approximately six feet away from the building. C.O.
> Baynard then planted his knee in my back dropping his full weight upon me. He
> never handcuffed me and never called for assistance even though several officers
> were just inside the building. Inmates could see from the window and began
> pounding on the window and calling for help. As the A.W., Capt. DuPuis, and other
> staff members came out the door, I cried out 'please someone help me.' I was
> snatched to my feet, still uncuffed and taken to the administration building. I gave
> my statement, was seen by medical and then released back to my housing unit.

(Id., p. 5.) Plaintiff claimed that she had "reason to believe that FPC Alderson was aware that there

were other instances with C.O. Baynard acting inappropriately with female inmates and failed to

provide proper security and safety." (Id.) As a result of the above incident, Plaintiff stated that she

suffered "possible permanent damage to her right leg, left shoulder, left elbow and back." (Id., p.

---

[2] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on
April 22, 2010.

7.) Plaintiff further stated that she suffered from post traumatic stress disorder [PTSD] and "this incident exacerbated my PTSD symptoms and created new terrors/triggers for me." (Id., p. 5.) Plaintiff requested monetary and declaratory relief. (Id., p. 7.)

Plaintiff paid the $350.00 filing fee on January 28, 2010. (Id., Document No. 3.) The Clerk issued Summons on February 8, 2010. (Id., Document No. 4.) On April 22, 2010, the United States filed a "Motion to Dismiss Defendant Baynard and Substitute the United States" and Memorandum of Law in Support. (Id., Document Nos 6 and 7.) Also on April 22, 2010, the United States filed a Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Id., Document Nos. 8 and 9.) The United States argued that there was a lack of jurisdiction because "the plaintiff has not exhausted her administrative remedies pursuant to the Federal Tort Claims Act." (Id., Document No. 8, p. 1.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 23, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Id., Document No. 10.) On June 24, 2010, Plaintiff filed a "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson." (Id., Document No. 19.) Also on June 24, 2010, Plaintiff filed her Responses in Opposition to the United States' Motions to Dismiss. (Id., Document Nos. 15 - 18.) On June 28, 2010, the United States filed its Reply. (Id., Document No. 20.)

On December 6, 2010, the Court granted Plaintiff's "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson." (Id., Document No. 24.) By Proposed Findings and Recommendation also entered on December 6, 2010, the undersigned recommended that "the District Court grant the United States' Motion to Dismiss

Defendant Officer Baynard and Substitute the United States (Document No. 6.) as to Plaintiff's FTCA claim, grant the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 8.) concerning Plaintiff's FTCA claim, and refer this matter back to the undersigned for further proceedings regarding Plaintiff's Bivens claim." (Id., Document No. 25.)

On January 4, 2011, Plaintiff filed her "Response to Proposed Findings & Recommendations." (Id., Document No. 28.) On January 14, 2011, Plaintiff filed a Motion to Extend Time to Amend Complaint (Document No. 35.), "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.), and "Motion to Amend Case" (Document No. 37.). By Order entered on January 18, 2011, the Court granted Plaintiff's Motion to Extend Time to Amend Complaint. (Id., Document No. 39.) On January 21, 2011, Plaintiff filed a "Motion to Amend Case" (Document No. 41.) and "Motion for Leave to Amend" (Document No. 42.). In her "Motion for Leave to Amend," Plaintiff clarified that she is requesting her Complaint be amended to include the following defendants: (1) Alice Lowe, Assistant Warden; (2) Captain Vicki Dupris; (3) James Engleman, Unit Manager; (4) SIS Lieutenant Painter; and (5) LieutenantLanden. (Id., Document No. 42.) On February 4, 2011, Plaintiff filed her Amended Complaint. (Id., Document No. 45.) Also on February 4, 2011, Plaintiff filed her "Amended Response to Proposed Findings & Recommendations." (Id., Document No. 44.)

By Memorandum Opinion and Order entered on March 31, 2011, United States District Judge David A. Faber found that Plaintiff failed to properly exhaust her administrative remedies and dismissed her FTCA claim as premature. (Id., Document No. 46, pp. 6 - 7.) The District Court further stated as follows: "That is not to say, however, that Kaufman cannot attempt to revive her FTCA claim. The law gives her another opportunity to present her claim to the appropriate agency.

4

28 U.S.C. § 2679(d)(5) provides that in a case where the United States has been substituted for an individual defendant, the plaintiff may cure a failure to exhaust his administrative remedies by filing for such remedies within sixty (60) days of the dismissal Order." (Id., p. 7.) District Judge Faber, therefore, adopted the undersigned's recommendation and referred the matter back to the undersigned for further proceedings on Plaintiff's Bivens claim. (Id., Document Nos. 46 and 47.)

By Order entered April 4, 2011, the undersigned granted Plaintiff's "Motion to Amend Case" (Document Nos. 37 and 41.) and "Motion for Leave to Amend" (Document No. 42.), and denied as moot Plaintiff's "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.). (Id., Document No. 48.) On April 14, 2011, the United States filed a Motion to Dismiss and Memorandum in Support. (Id., Document Nos. 54 and 55.) Specifically, the United States requests "plaintiff's Bivens action against defendants Baynard, Warden Amber Nelson, Lt. Landen, Cpt. Dupris, Associate Warden Alice Lowe, and SIS Painter in their official capacity be dismissed." (Id., Document No. 55.) Also on April 14, 2011, Defendant Baynard filed a Motion to Dismiss and Memorandum in Support. (Id., Document Nos. 56 and 57.) Specifically, Defendant Baynard argues that Plaintiff's Bivens action against him is prohibited by the judgment bar of the FTCA, 28 U.S.C. § 2676. (Id., Document No. 57.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 15, 2011, advising her of the right to file a response to the United States' Motion to Dismiss and Defendant Baynard's Motion to Dismiss. (Id., Document No. 59.) On May 13, 2011, Plaintiff filed her Responses in Opposition. (Id., Document Nos. 62 - 64.)

On June 3, 2011, Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Id., Document Nos. 66 and 67.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), was issued to Plaintiff on June 6, 2011, advising her of the right to file a response

to Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's "Motion to Dismiss, or in

the Alternative, Motion for Summary Judgment." (Id., Document No. 68.) On July 11, 2011,

Plaintiff filed her Response in Opposition and Memorandum in Support. (Id., Document Nos. 69 -

70.)

On September 12, 2011, Plaintiff filed a "Motion to Revive Plaintiff's FTCA (28 U.S.C.

1346(b)) Claim." (Id., Document No. 73.) In support, Plaintiff stated as follows (Id.):

> At this point in time, the Plaintiff has completely exhausted her administrative
> remedy requirements and seeks to revive her FTCA claim against the U.S.
> Government, who is being substituted for Defendant Baynard. Plaintiff Kaufman
> submitted her Tort Claim to the appropriate agency on January 18, 2011, and was
> given receipt of the submission. When a tort claim is submitted, it is considered
> closed/denied when either the Bureau of Prisons (appropriate party) has responded
> or six months have elapsed without response to the Tort Claim submission. As of
> July 18, 2011, there has been no response from the appropriate agency in regards to
> this claim. In the court's opinion and order (Document No. 46), it is explained to the
> Plaintiff that upon exhaustion of her administrative remedies Plaintiff may revive the
> FTCA claim under 28 U.S.C. § 2679(d)(5).

On September 26, 2011, Defendant Baynard filed a "Notice of Additional Authority." (Id.,

Document No. 74.) In support of his Motion to Dismiss, Defendant Baynard attaches a copy the

Memorandum Opinion and Order entered on September 23, 2011, in Sanchez v. Felts, Civil Action

No. 5:07-cv-0355 (S.D.W.Va. Sep. 23, 2011)(J. Johnston). (Id., pp. 3 - 18.)

By Proposed Findings and Recommendation entered on February 3, 2012, the undersigned

recommended that the District Court grant the United States' Motion to Dismiss (Document No.

54.), grant Defendant Baynard's Motion to Dismiss (Document No. 56.), and grant Defendants

Nelson, Landen, Dupris, Lowe, Painter, and Engleman's Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment (Document No. 66.). (Id., Document No. 76.) Also by Order entered

6

on February 3, 2012, the undersigned construed Plaintiff's "Motion to Revive Plaintiff's FTCA Claim" as a civil action filed under FTCA and directed the Clerk to open a new civil action. (Id., Document No. 75.) By Memorandum Opinion and Order entered on March 12, 2012, United States District Judge Faber adopted the undersigned's recommendation and dismissed Plaintiff's <u>Bivens</u> claim. (Id., Document Nos. 77 and 78.)

**2.      Civil Action No. 1:12-0237:**

By Order entered on February 3, 2012, the undersigned construed Plaintiff's "Motion to Revive Plaintiff's FTCA Claim" as a civil action filed under Federal Tort Claims Act , 28 U.S.C. §§ 1346(b) and 2671, *et seq*, thereby initiating <u>Kaufman v. United States</u>, Civil Action No. 1:12-0237. (Civil Action No. 1:12-0237, Document No. 1-1.) Specifically, the undersigned ordered as follows:

> [I]t is hereby **ORDERED** that the Clerk open a new civil action, include therein a copy of Plaintiff's Motion (Document No. 73), and file the Motion (Document No. 73) *nunc pro tunc* to September 12, 2011. The undersigned further **ORDERS** that the Clerk send Plaintiff a copy of a form Complaint and Application to Proceed *in Forma Pauperis* and that within 30 days of the date of entry of this Order (1) Plaintiff file, if she wishes, the form Complaint specifying her claims, and (2) Plaintiff either pay the $350.00 filing fee or file the Application to Proceed *in Forma Pauperis* as required by 28 U.S.C. § 1915(a)(1).

(Id.) On March 7, 2012, Plaintiff filed her Complaint and Application to Proceed Without Prepayment of Fees. (Id., Document Nos. 4 and 5.) In her Complaint, Plaintiff alleges as follows:

> On January 8, 2008, I was assaulted by Officer H. Baynard. I was waiting in line at the dining hall. Inmate Brandy Stevens was in front of me and she went through the door that Baynard was holding open. Baynard began yelling at her that she entered the wrong door and demanded that she come back out of the building and go back through the other door. Neither door was marked enter or exist. I waited for Stephens to come back around and mumbled to her "that was real important." Baynard heard what I said to her and yelled at me, demanding my ID. He then ordered me to report to the Lieutenant's office after the meal. He instructed me to get back in line and I complied. Immediately, Baynard called me back over to the entrance and ordered me

outside. As I walked outside, he was screaming obscenities and threatening me. Quietly and without animosity, I said that he was speaking to me disrespectfully and to please stop. He then ordered, "fine, put your hands on the wall." I complied and C.O. Baynard began roughly searching me. He continued to strike at my pockets where I had paper. I turned my head to the right and told him that I wanted to speak to Captain DuPuis. Suddenly, I was slammed into the wall repeatedly. I lifted my hands above my head and cried out "Stop touching me! I want to see the Captain. Stop touching me!" He continued to slam me against the wall. He then grabbed my arm and neck and swung me around to face the opposite direction and swung me onto the ground approximately six feet away from the building. C.O. Baynard then planted his knee in my back dropping his full weight upon me. He never handcuffed me and never called for assistance even though several officers were just inside the building. Inmates could see from the window and began pounding on the window and calling for help. As the A.W., Caption DuPuis and other staff members came out the door, I cried out "please someone help me." I was snatched to my feet, still uncuffed, and taken to the administrative building. I gave my statement, was seen by medical, and then released back to my housing unit.

(Id., Document No. 4, p. 8.) Plaintiff contends officials at FPC Alderson were aware of "other instances with C.O. Baynard acting inappropriately with female inmates and failed to provide proper security and safety." (Id.) As relief, Plaintiff requests "monetary compensation in the amount of 1.5 million dollars to address physical, emotional, and financial damages suffered due to the defendant's actions." (Id., p. 9.)

By Order entered on March 20, 2012, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to serve the Summonses and Complaint pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Id., Document No. 6.) The Clerk issued Summonses on March 20, 2012. (Id., Document No. 7.)

On April 10, 2012, the United States filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Id., Document Nos. 8 and 9.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 11, 2012, advising her of the right to file a response to the United States' Motion to Dismiss. (Id., Document

No. 10.) On May 11, 2012, Plaintiff filed her Response in Opposition and Memorandum in Support. (Id., Document Nos. 13 and 14.) On May 15, 2012, the United States filed its Reply. (Id., Document No. 16.)  By Proposed Findings and Recommendation entered on January 29, 2013, the undersigned recommended that the United States' Motion to Dismiss be denied and the matter be referred back to the undersigned for further proceedings. (Id., Document No. 17.) By Memorandum Opinion and Order entered on February 21, 2013, United States District Judge David A. Faber adopted the undersigned's recommendation and referred to the matter back to the undersigned for further proceedings. (Id., Document No. 19.)

On August 9, 2013, the United States filed its Motion for Summary Judgment and Memorandum in Support. (Id., Document Nos. 37 and 38.) The United States argues that it is entitled to summary judgment because "Plaintiff, as a matter of law, cannot prevail on her claim of battery because plaintiff had a legal duty to obey the orders of Officer Baynard to consent to the pat down search." (Id.) As Exhibits, the United States attaches the following: (1) The Declaration of Harrison Baynard (Document No. 37, p. 4.); (2) A copy of Officer Baynard's Statement dated January 28, 2008 (Id., p. 5.); (3) A copy of Officer Baynard's Affidavit dated July 2, 2008 (Id., p. 6 - 9); (4) The Affidavit of Plaintiff dated June 11, 2008 (Id., pp. 10 - 11.); (5) Cited portions of Plaintiff's Deposition dated May 31, 2013 (Id., p. 12 - 25.); (6) The Declaration of Sharon Wahl (Id., pp. 26 - 27.); and (7) A copy of relevant pages of the Disciplinary Action concerning Plaintiff's charge for Refusing to Obey an Order (Id., pp. 29 - 32.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 12, 2013, advising her of the right to file a response to the United States' Motion for Summary Judgment. (Id., Document No. 39.) On December 2, 2013, Plaintiff filed her Response in

9

Opposition. (Id., Document No. 47.) First, Plaintiff argues that "there exist arguable issues of triable fact between the plaintiff and defendants, which as such should be determined by a jury." (Id., p. 1.) Plaintiff contends that she has stated a viable claim and the Court should not "adopt the version of the defendant's accounts." (Id., pp. 1 - 2.) Plaintiff argues that "a reasonable jury could find that Officer Baynard violated her rights."[3] (Id., p. 2.) Plaintiff explains that "Baynard's testimony differs greatly from the facts as may be determined by the evidence." (Id., p. 3.) Plaintiff further argues that "Defendant has described no threat, no violent language or actions, and no suspicions as to the plaintiff as to why he separated her away from and out of sight of the other inmates and numerous officers present at and around the cafeteria area." (Id., p. 5.) Plaintiff asserts that "if the defendant (Baynard) had suspected a real viable treat, he would have asked a nearby (well within earshot) officer to assist him." (Id.)

On December 3, 2013, the United States filed its Reply continuing to argue that it is entitled to summary judgment. (Id., Document No. 48.) Specifically, the United States contends that "Plaintiff's response fails to raise a genuine issue of material fact in opposition to the United States' Motion for Summary Judgment." (Id.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts

---

[3] The Court notes that FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990).

presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq*., authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. <u>Carlson</u>

11

v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that her action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued. While claims of assault and battery against the United States are generally barred, the FTCA permits such claims against law enforcement officers. See 28 U.S.C. § 2680(h).

In West Virginia, a person is subject to liability for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Tolliver v. The Kroger Co., 201 W.Va. 509, 498 S.E.2d 792, 711 (1997)(quoting Restatement (Second) of Torts § 13 (1965). An activity, however, that would otherwise subject a person to liability in tort for battery does not constitute tortious conduct if the actor is privileged to engaged in such conduct. Hutchinson v. West Virginia State Police, 731 F.Supp.2d 521, 547 (S.D.W.Va. Aug. 5, 2010)(citation omitted); Muehler v. Mena, 544 U.S. 93, 98-99, 125 S.Ct. 1465, 1467, 161 L.Ed.2d 299 (2005)("Inherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention.") "Under West Virginia law, as under federal law, an officer may use the amount of force necessary to bring an arrestee under his control." Lowe v. Spears, 2009 WL 1393860, * 6 (S.D.W.Va. May 15, 2009)(citations omitted). Additionally, BOP staff are authorized to use necessary force "as a last alternative after all other reasonable efforts to resolve a situation have failed." 28 C.F.R. § 552.20; Program Statement 5566.06. Specifically, BOP staff must use "only the amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent

12

serious property damage and to ensure institution security and good order." Id. Thus, the use of unnecessary force may result in battery. See Hutchinson, 731 F.Supp.2d at 548(nothing that a battery could result from an officer's offensive contact where there is no reasonable justification for this offensive contact); Lowe, 2009 WL 1393860 at * 6 (finding that claims of assault and battery could not survive where "[t]here is no evidence that Spears used an excessive amount of force"); Alqam v. United States, 2008 WL 2945492 (N.D.W.Va. July 24, 2008)(finding summary judgment appropriate as to plaintiff's assault and battery claim where there was "absolutely no evidence showing that the use of force was unreasonable in the situation" and where "evidence proffered by the defendants makes clear that a subsequent investigation of the incident found defendant Vance's use of force to be both necessary and appropriate under the circumstances"); also see Detris v. Coats, 523 Fed.Appx. 612, 617 (11th Cir. 2013)(noting that if excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery).

The United States argues that "Plaintiff, as a matter of law, cannot prevail on her claim of battery because plaintiff had a legal duty to obey the orders of Officer Baynard to consent to the pat down search." (Civil Action No. 1:12-0237, Document Nos. 37 and 38.) Plaintiff contends that summary judgment is inappropriate because issues of fact exist. (Id., Document No. 47.) The undersigned will therefore consider the evidence to determine whether a genuine issue of material fact exists. The record reveals that Plaintiff was charged with Refusing to Obey an Order in violation of Code 307 by Incident Report dated January 28, 2008. (Civil Action No. 1:12-0237, Document No. 37, pp. 31 - 32.) In pertinent part, the Incident Report describes the incident as follows:

> I ordered Kaufman to turn around and place her hands on the wall. Kaufman complied with my order. I started to pat Kaufman down and she continued to be argumentative. Once I reached the right pocket of her jacket, she removed her right hand from the well and was attempting to turn and face me. I ordered Kaufman to

13

put her hand back on the wall. Kaufman failed to comply and attempted to pull away. I grabbed Kauman's arm and placed it back on the wall. Kaufman continued to resist and began yelling, "Don't touch me," over and over. I was able to get Kaufman pinned to the wall. Kaufman and I slide down the wall and I finally placed Kaufman on the ground.

(Id., p. 31.) In Response to the Incident Report, Plaintiff stated as follows:

I did not refuse an order and I was not given an order. I disagree with the verbiage in the report. I did  say something to another inmate, but not to him. I said I have civil rights to speak freely as long as I'm not disrespectful or brake the rules and this is totally not what happened and you probably have half a dozen statements saying otherwise. He did not tell me to put my hand back on the wall. I don't agree with this report and this is not in my nature to act like that.

(Id., p. 32.)[4] Also on January 28, 2008, Officer Baynard submitted the following written statement

to Lieutenant Landon:

At approximately 11:45 a.m. on Monday, January 28, 2008, while conducting the feeding of inmates I observed an inmate enter the wrong door of CDR. I ordered the inmate to exit the CDR and enter through the correct door. The inmate complied, but another inmate (Kaufman, Jean, 75096-083) commented in a sarcastic tone, "that was real important." I ordered inmate Kaufman over and instructed her to refrain from making comments that under mind the authority of staff. Inmate Kaufman continued to talk about her civil rights and her right to freedom of speech. Kaufman stated, "she was allowed to say anything she wanted." I ordered Kaufman to give me her I.D. and report to the lieutenant's office after she ate her lunch. Kaufman gave me her I.D. card, but continued to talk about her rights and remained argumentative instead of going to mainline. It was apparent that Kaufman was going to continue this type of behavior. At this time, I ordered Kaufman to turn around place her hands on the wall. Kaufman complied with my order. I started to pat Kaufman down and she continued

---

[4]  The Unit Discipline Committee ["UDC"] referred Plaintiff's disciplinary matter to the Discipline Hearing Officer ["DHO"]. (Civil Action No. 1:12-0237, Document No. 37, pp. 31 - 32.) The disciplinary action was suspended pending investigation into Plaintiff's allegations of excessive force. (Id., p. 26.) Plaintiff's allegations of excessive force were not sustained and disciplinary action continued against Plaintiff at her new institution (SFF Hazelton). (Id., p. 26 and 29.) During the continuation of the disciplinary action at SFF Hazelton, Plaintiff stated that "I had my hands on the wall and I turned to my right to speak to him. I moved my hand." (Id., p. 30.) The new UDC found that Plaintiff violated Prohibited Act 307 "[b]ased on the inmate's admission that she moved her hand off the wall and the officer's statement that when the inmate turned, she removed her hand from the wall and attempted to face the officer." (Id.)

14

to be argumentative. Once I reached the right pocket of her jacket, she removed her right hand from the wall and was attempting to turn and face me. I ordered Kaufman to put her hand back on the wall. Kaufman refused and became physically combative. I grabbed Kaufman's right arm and placed it back on the wall. Kaufman was still refusing to comply and was physically trying to resist. She was refusing to comply with a pat search or being placed in hand restraints. Inmate Kaufman started to yell, "Don't touch me," over and over. I was able to keep Kaufman pinned against the wall and then managed to take her to the ground. At this time, additional staff arrived and took control of Kaufman. I was unable to radio for assistance while trying to restrain Kaufman. Once staff had gained control of Kaufman, I reported to medical for a medical assessment. I have no injuries to report as a result of this incident.

(Id., p. 5.)

By Affidavit dated June 11, 2008, Plaintiff described the incident as follows:

While I was incarcerated at FPC Alderson, on January 28, 2008, I was going into the Central Dining Hall at about 11:00 a.m., Officer Baynard walked out of the Dining Hall door and another inmate went into the Dining Room. Officer Baynard yelled at her and told her to use the other door to enter the Dining Room. I told the other inmate, "that was real important." Officer Baynard said he was not speaking to me and was tired of me and took my ID card[5] and told me to go to the Lieutenant's Office after I eat. I went into the Dinning Room and got into the line and Officer Baynard pulled me out of line and took me outside where there were no inmates. Officer Baynard stated to me that he did not want me to speak in his presence again and that he was sick of me and my mouth. I told Officer Baynard that I have basic human rights like to speak, and he replied that I was a piece of shit. He instructed me to put my hands on the wall for a pat search. As Officer Baynard was pat searching me he was being rough so I turned my head and my right hand slid down the wall and I told him that he was being inappropriate and I wanted to see the Captain. After I said that, Officer Baynard slammed me into the wall. After I was slammed into the wall, I put my hands over my head and yelled, "you didn't even warn me, you're not supposed to touch me, I want to see the Captain, don't touch me." He continued to slam me up against the wall then slammed me on the ground and put his knee in my back. After I was on the ground I yelled, "please get him off me," and the Captain, an AW, and other staff separated me and Officer Baynard and escorted me to the Administration Building for a statement and was released back to the general population.

_____

[5] Plaintiff explained that "[i]t was the average practice on compound that somebody would take your ID and tell you to pick it up at the Lieutenant's office. They'd either meet you there or the Lieutenant would explain what your charge was." (Document No. 37, p. 21.)

(Id., p. 10.) Officer Baynard described the incident in further detail in an Affidavit dated July 2,

2008. (Id., pp. 6 - 9.) In pertinent part, Officer Baynard stated as follows:

> 7.     I ordered Kaufman to put her hands on the wall and submit to a pat search. Once she put her hands on the wall I began the search. When I got to her right jacket pocket, she pulled her right hand off the wall and tried to turn and face me.

> 8.     I told her to put her hand back on the wall and she refused. At this point Kaufman became physically combative by turning toward me and flailing her arms. I then grabbed her right arm and placed it back on the wall. She continued to refuse my orders and continued to resist me and my orders. Kaufman tried to turn around and she was throwing hands around. I didn't know if she was going to run from me or what her intentions were. I told her to stop. I was trying to be more defensive with her than offensive. I tried to keep her facing the wall, but we continued down the wall as she continually tried to turn toward me flailing her arms. Kaufman began yelling, "Don't touch me." I eventually pinned Kaufman to the wall until I could take her to the ground.

> 9.     I had Kaufman by her jacket with both hands. My right hand was on right shoulder and my left hand was on her left shoulder as her momentum took her to the ground. She kept trying to move away from me. I didn't have to use extreme measure to place her on the ground. My goal was to get her onto the ground to control her. I didn't use excessive force to place her on the ground, but the minimal amount of force to control her.

> 10.     When she went to the ground she fell on her side and I was able to maintain my balance. I quickly rolled her on her stomach so hand restraints could be applied. Kaufman continued to yell and scream, "Don't touch me. Anyone can touch me but him." Kaufman continued to fling her arms and legs around trying to turn over and onto her back.

(Id., pp. 7 - 8.)

    During her deposition, Plaintiff claimed that she did not object to the pat down search, but

she did object to the roughness of the pat down search. (Id., p. 21 - 22.) Plaintiff explained that

during a "typical pat search," "they run their hands down your sides. They, you know, blade you."

(Id., p. 15.) Plaintiff stated that instead of the using the "typical pat search," Officer Baynard "was

patting me - - the only word I can use is aggressively." (Id., p. 16.) Plaintiff states that she "turned

and told him - - turned my head and told him that I thought he was being too rough and I wanted to

see the Captain." (Id., p. 17.) Plaintiff explained that she turned her head, but "at no point did [she]

turn around." (Id., pp. 18 - 19.)  Plaintiff stated that Officer Baynard then "grabbed my shoulders,

arms in this (indicating area) and this (indicating) area and started slamming me against the wall."

(Id., p. 17.) Plaintiff explained that she "was holding [her] hands up and saying, 'Please don't - -

You know, please don't touch me,' throughout this process of being slammed." (Id.)

Based upon the foregoing, the undersigned finds that there are genuine issues of material fact

concerning whether Plaintiff refused an order and whether Officer Baynard used necessary force in

response to any refusal to obey an order. First, there is a genuine issue of material fact concerning

whether Plaintiff removed her hand from the wall during the pat down search. Plaintiff's statements

indicate that she only turned her head and her hand slid down the wall, while Officer Baynard's

statements indicate that Plaintiff removed her hand from the wall and turned her body in an attempt

to face him. (Civil Action No. 1:12-0237, Document No. 37, pp. 5 - 8, 10, 18, 31 - 32.) Second, there

is a genuine issue of material fact concerning whether Officer Baynard used necessary force in

response to the movement of Plaintiff's hand on the wall. According to Plaintiff's statement, Officer

Baynard immediately "slammed" her into wall after her hand slid down the wall and she requested

to speak to the Captain. (Id., pp. 10, 17 - 19, 32.) Plaintiff's statements indicate that even though

Plaintiff put her hands over her head and did not physically resist, Officer Baynard continued to

"slam" her against the wall and then "slammed" her to the ground. (Id.) According to Officer

Baynard's statements, he ordered Plaintiff to put her hand back on the wall and Plaintiff refused and

became physically combative. (Id., pp. 5 - 8, 31.) Officer Baynard's statement indicates that in

response to Plaintiff's physical resistance and refusal to comply with orders, he "pinned [her] against the wall and then managed to take her to the ground." (<u>Id.</u>) Thus, the record reveals conflicting evidence concerning what occurred during the pat down search. Plaintiff's statements indicate that the use of force was unnecessary, while Officer Baynard's statements indicate that the use of force was appropriate and necessary. Viewing the facts in the light most favorable to Plaintiff, the undersigned finds that the United States' Motion for Summary Judgment should be denied because there are triable issues concerning whether Plaintiff was inappropriately and offensively touched, without justification, in the course of the pat down search.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** the United States' Motion for Summary Judgment (Document No. 37.).

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber

and this Magistrate Judge.

    The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

    Date: December 19, 2013.

R. Clarke VanDervort
United States Magistrate Judge