IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| JEAN ELIZABETH KAUFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12-0237 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) The United States' Motion to Dismiss (Document No. 67.), filed on March 21, 2013; and (2) Plaintiff Motion for Leave to Amend (Document Nos. 93 and 96), filed on May 5, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States in moving to dismiss. (Document No. 69.) On May 7, 2014, Plaintiff filed her Response in Opposition. (Document Nos. 102 and 103.) The United States filed its Reply on May 13, 2014. (Document No. 108.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion should be denied and Plaintiff's Motion for Leave to Amend should be denied.

FACTUAL AND PROCEDURAL HISTORY

1.      Civil Action No. 1:10-0071:

On January 25, 2010, Plaintiff, formerly an inmate at FPC Alderson, and acting *pro se*, filed

her Complaint claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Civil Action No. 1:10-

0071, Document No. 1.) Plaintiff named the following as Defendants: (1) Correctional Officer H.

Baynard, and (2) FPC Alderson. (Id.) In her Complaint, Plaintiff alleged as follows:

> On January 28, 2008, I was assaulted by Officer H. Baynard. I was waiting in line at the dining hall. Inmate Brandy Stevens was in front of me and she went through the door that Baynard was holding open. Baynard began yelling at her that she entered the wrong door and demanded that she come back out of the building and go back through the other door. Neither door was marked enter or exit. I waited for Stephens to come back around and mumbled to her 'that was real important.' Baynard heard what I said to her and yelled at me, demanding my ID. He then ordered me to report to the Lieutenant's office after the meal. He instructed me to get back in line and I complied. Immediately, Baynard called me back over to the entrance and ordered me outside. As I walked outside he was screaming obscenities and threatening me. Quietly and without animosity, I said that he was speaking to me disrespectfully and to please stop. He then ordered, 'fine, put your hands on the wall.' I complied and C.O. Baynard began roughly searching me. He continued to strike at my pockets where I had paper. I turned my head to the right and told him that I wanted to speak to Captain DuPuis. Suddenly I was slammed into the wall repeatedly. I lifted my hands above my head and cried out 'Stop touching me! I want to see the Captain. Stop touching me!' He continued to slam me against the wall. He then grabbed my arm and neck and swung me around to face the opposite direction and slung me onto the ground approximately six feet away from the building. C.O. Baynard then planted his knee in my back dropping his full weight upon me. He never handcuffed me and never called for assistance even though several officers were just inside the building. Inmates could see from the window and began pounding on the window and calling for help. As the A.W., Capt. DuPuis, and other staff members came out the door, I cried out 'please someone help me.' I was snatched to my feet, still uncuffed and taken to the administration building. I gave my statement, was seen by medical and then released back to my housing unit.

(Id., p. 5.) Plaintiff claimed that she had "reason to believe that FPC Alderson was aware that there

were other instances with C.O. Baynard acting inappropriately with female inmates and failed to

provide proper security and safety." (Id.) As a result of the above incident, Plaintiff stated that she

---

[1]   Because Plaintiff is acting *pro se*, the documents which she has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

suffered "possible permanent damage to her right leg, left shoulder, left elbow and back." (Id., p. 7.) Plaintiff further stated that she suffered from post traumatic stress disorder [PTSD] and "this incident exacerbated my PTSD symptoms and created new terrors/triggers for me." (Id., p. 5.) Plaintiff requested monetary and declaratory relief.[2] (Id., p. 7.)

Plaintiff paid the $350.00 filing fee on January 28, 2010. (Id., Document No. 3.) The Clerk issued Summons on February 8, 2010. (Id., Document No. 4.) On April 22, 2010, the United States filed a "Motion to Dismiss Defendant Baynard and Substitute the United States" and Memorandum of Law in Support. (Id., Document Nos 6 and 7.) Also on April 22, 2010, the United States filed a Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Memorandum in Support. (Id., Document Nos. 8 and 9.) The United States argued that there was a lack of jurisdiction because "the plaintiff has not exhausted her administrative remedies pursuant to the Federal Tort Claims Act." (Id., Document No. 8, p. 1.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 23, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Id., Document No. 10.) On June 24, 2010, Plaintiff filed a "Motion to Amend Wording of U.S.C. 1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson." (Id., Document No. 19.) Also on June 24, 2010, Plaintiff filed her Responses in Opposition to the United States' Motions to Dismiss. (Id., Document Nos. 15 - 18.) On June 28, 2010, the United States filed its Reply. (Id., Document No. 20.)

On December 6, 2010, the Court granted Plaintiff's "Motion to Amend Wording of U.S.C.

---

[2] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on April 22, 2010.

1983 Submission to Include Warden Amber Nelson in Substitution of FPC Alderson." (Id., Document No. 24.) By Proposed Findings and Recommendation also entered on December 6, 2010, the undersigned recommended that "the District Court grant the United States' Motion to Dismiss Defendant Officer Baynard and Substitute the United States (Document No. 6.) as to Plaintiff's FTCA claim, grant the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 8.) concerning Plaintiff's FTCA claim, and refer this matter back to the undersigned for further proceedings regarding Plaintiff's Bivens claim." (Id., Document No. 25.)

On January 4, 2011, Plaintiff filed her "Response to Proposed Findings & Recommendations." (Id., Document No. 28.) On January 14, 2011, Plaintiff filed a Motion to Extend Time to Amend Complaint (Document No. 35.), "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.), and "Motion to Amend Case" (Document No. 37.) By Order entered on January 18, 2011, the Court granted Plaintiff's Motion to Extend Time to Amend Complaint. (Id., Document No. 39.) On January 21, 2011, Plaintiff filed a "Motion to Amend Case" (Document No. 41.) and "Motion for Leave to Amend" (Document No. 42.). In her "Motion for Leave to Amend," Plaintiff clarified that she is requesting her Complaint be amended to include the following defendants: (1) Alice Lowe, Assistant Warden; (2) Captain Vicki Dupris; (3) James Engleman, Unit Manager; (4) SIS Lieutenant Painter; and (5) Lieutenant Landen. (Id., Document No. 42.) On February 4, 2011, Plaintiff filed her Amended Complaint. (Id., Document No. 45.) Also on February 4, 2011, Plaintiff filed her "Amended Response to Proposed Findings & Recommendations." (Id., Document No. 44.)

By Memorandum Opinion and Order entered on March 31, 2011, United States District Judge David A. Faber found that Plaintiff failed to properly exhaust her administrative remedies and

dismissed her FTCA claim as premature. (Id., Document No. 46, pp. 6 - 7.) The District Court further stated as follows: "That is not to say, however, that Kaufman cannot attempt to revive her FTCA claim. The law gives her another opportunity to present her claim to the appropriate agency. 28 U.S.C. § 2679(d)(5) provides that in a case where the United States has been substituted for an individual defendant, the plaintiff may cure a failure to exhaust his administrative remedies by filing for such remedies within sixty (60) days of the dismissal Order." (Id., p. 7.) District Judge Faber, therefore, adopted the undersigned's recommendation and referred the matter back to the undersigned for further proceedings on Plaintiff's Bivens claim. (Id., Document Nos. 46 and 47.)

By Order entered April 4, 2011, the undersigned granted Plaintiff's "Motion to Amend Case" (Document Nos. 37 and 41.) and "Motion for Leave to Amend" (Document No. 42.), and denied as moot Plaintiff's "Motion to Amend Case from 28 USC 1983 to Bivens" (Document No. 36.). (Id., Document No. 48.) On April 14, 2011, the United States filed a Motion to Dismiss and Memorandum in Support. (Id., Document Nos. 54 and 55.) Specifically, the United States requests "plaintiff's Bivens action against defendants Baynard, Warden Amber Nelson, Lt. Landen, Cpt. Dupris, Associate Warden Alice Lowe, and SIS Painter in their official capacity be dismissed." (Id., Document No. 55.) Also on April 14, 2011, Defendant Baynard filed a Motion to Dismiss and Memorandum in Support. (Id., Document Nos. 56 and 57.) Specifically, Defendant Baynard argues that Plaintiff's Bivens action against him is prohibited by the judgment bar of the FTCA, 28 U.S.C. § 2676. (Id., Document No. 57.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 15, 2011, advising her of the right to file a response to the United States' Motion to Dismiss and Defendant Baynard's Motion to Dismiss. (Id., Document No. 59.) On May 13, 2011, Plaintiff filed her Responses in Opposition. (Id., Document Nos. 62 - 64.)

On June 3, 2011, Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Id., Document Nos. 66 and 67.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 6, 2011, advising her of the right to file a response to Defendants Nelson, Landen, Dupris, Lowe, Painter, and Engleman's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Id., Document No. 68.) On July 11, 2011, Plaintiff filed her Response in Opposition and Memorandum in Support. (Id., Document Nos. 69 - 70.)

On September 12, 2011, Plaintiff filed a "Motion to Revive Plaintiff's FTCA (28 U.S.C. 1346(b)) Claim." (Id., Document No. 73.) In support, Plaintiff stated as follows (Id.):

> At this point in time, the Plaintiff has completely exhausted her administrative remedy requirements and seeks to revive her FTCA claim against the U.S. Government, who is being substituted for Defendant Baynard. Plaintiff Kaufman submitted her Tort Claim to the appropriate agency on January 18, 2011, and was given receipt of the submission. When a tort claim is submitted, it is considered closed/denied when either the Bureau of Prisons (appropriate party) has responded or six months have elapsed without response to the Tort Claim submission. As of July 18, 2011, there has been no response from the appropriate agency in regards to this claim. In the court's opinion and order (Document No. 46), it is explained to the Plaintiff that upon exhaustion of her administrative remedies Plaintiff may revive the FTCA claim under 28 U.S.C. § 2679(d)(5).

On September 26, 2011, Defendant Baynard filed a "Notice of Additional Authority." (Id., Document No. 74.) In support of his Motion to Dismiss, Defendant Baynard attaches a copy the Memorandum Opinion and Order entered on September 23, 2011, in Sanchez v. Felts, Civil Action No. 5:07-cv-0355 (S.D.W.Va. Sep. 23, 2011)(J. Johnston). (Id., pp. 3 - 18.)

By Proposed Findings and Recommendation entered on February 3, 2012, the undersigned recommended that the District Court grant the United States' Motion to Dismiss (Document No.

6

54.), grant Defendant Baynard's Motion to Dismiss (Document No. 56.), and grant Defendants

Nelson, Landen, Dupris, Lowe, Painter, and Engleman's Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment (Document No. 66.). (Id., Document No. 76.) Also by Order entered

on February 3, 2012, the undersigned construed Plaintiff's "Motion to Revive Plaintiff's FTCA

Claim" as a civil action filed under FTCA and directed the Clerk to open a new civil action. (Id.,

Document No. 75.) By Memorandum Opinion and Order entered on March 12, 2012, United States

District Judge Faber adopted the undersigned's recommendation and dismissed Plaintiff's Bivens

claim. (Id., Document Nos. 77 and 78.)

## 2.    Civil Action No. 1:12-0237:

By Order entered on February 3, 2012, the undersigned construed Plaintiff's "Motion to

Revive Plaintiff's FTCA Claim" as a civil action filed under Federal Tort Claims Act , 28 U.S.C.

§§ 1346(b) and 2671, *et seq*, thereby initiating Kaufman v. United States, Civil Action No. 1:12-

0237. (Civil Action No. 1:12-0237, Document No. 1-1.) Specifically, the undersigned ordered as

follows:

> [I]t is hereby **ORDERED** that the Clerk open a new civil action, include therein a
> copy of Plaintiff's Motion (Document No. 73), and file the Motion (Document No.
> 73) *nunc pro tunc* to September 12, 2011. The undersigned further **ORDERS** that
> the Clerk send Plaintiff a copy of a form Complaint and Application to Proceed *in
> Forma Pauperis* and that within 30 days of the date of entry of this Order (1)
> Plaintiff file, if she wishes, the form Complaint specifying her claims, and (2)
> Plaintiff either pay the $350.00 filing fee or file the Application to Proceed *in Forma
> Pauperis* as required by 28 U.S.C. § 1915(a)(1).

(Id.) On March 7, 2012, Plaintiff filed her Complaint and Application to Proceed Without

Prepayment of Fees. (Id., Document Nos. 4 and 5.) In her Complaint, Plaintiff alleges as follows:

> On January 8, 2008, I was assaulted by Officer H. Baynard. I was waiting in line at
> the dining hall. Inmate Brandy Stevens was in front of me and she went through the
> door that Baynard was holding open. Baynard began yelling at her that she entered

the wrong door and demanded that she come back out of the building and go back through the other door. Neither door was marked enter or exist. I waited for Stephens to come back around and mumbled to her "that was real important." Baynard heard what I said to her and yelled at me, demanding my ID. He then ordered me to report to the Lieutenant's office after the meal. He instructed me to get back in line and I complied. Immediately, Baynard called me back over to the entrance and ordered me outside. As I walked outside, he was screaming obscenities and threatening me. Quietly and without animosity, I said that he was speaking to me disrespectfully and to please stop. He then ordered, "fine, put your hands on the wall." I complied and C.O. Baynard began roughly searching me. He continued to strike at my pockets where I had paper. I turned my head to the right and told him that I wanted to speak to Captain DuPuis. Suddenly, I was slammed into the wall repeatedly. I lifted my hands above my head and cried out "Stop touching me! I want to see the Captain. Stop touching me!" He continued to slam me against the wall. He then grabbed my arm and neck and swung me around to face the opposite direction and swung me onto the ground approximately six feet away from the building. C.O. Baynard then planted his knee in my back dropping his full weight upon me. He never handcuffed me and never called for assistance even though several officers were just inside the building. Inmates could see from the window and began pounding on the window and calling for help. As the A.W., Caption DuPuis and other staff members came out the door, I cried out "please someone help me." I was snatched to my feet, still uncuffed, and taken to the administrative building. I gave my statement, was seen by medical, and then released back to my housing unit.

(Id., Document No. 4, p. 8.) Plaintiff contends officials at FPC Alderson were aware of "other instances with C.O. Baynard acting inappropriately with female inmates and failed to provide proper security and safety." (Id.) As relief, Plaintiff requests "monetary compensation in the amount of 1.5 million dollars to address physical, emotional, and financial damages suffered due to the defendant's actions." (Id., p. 9.)

By Order entered on March 20, 2012, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to serve the Summonses and Complaint pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Id., Document No. 6.) The Clerk issued Summonses on March 20, 2012. (Id., Document No. 7.)

On April 10, 2012, the United States filed its Motion to Dismiss for Lack of Subject Matter

Jurisdiction and Memorandum in Support. (Id., Document Nos. 8 and 9.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 11, 2012, advising her of the right to file a response to the United States' Motion to Dismiss. (Id., Document No. 10.) On May 11, 2012, Plaintiff filed her Response in Opposition and Memorandum in Support. (Id., Document Nos. 13 and 14.) On May 15, 2012, the United States filed its Reply. (Id., Document No. 16.)  By Proposed Findings and Recommendation entered on January 29, 2013, the undersigned recommended that the United States' Motion to Dismiss be denied and the matter be referred back to the undersigned for further proceedings. (Id., Document No. 17.) By Memorandum Opinion and Order entered on February 21, 2013, United States District Judge David A. Faber adopted the undersigned's recommendation and referred to the matter back to the undersigned for further proceedings. (Id., Document No. 19.)

On August 9, 2013, the United States filed its Motion for Summary Judgment and Memorandum in Support. (Id., Document Nos. 37 and 38.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 12, 2013, advising her of the right to file a response to the United States' Motion for Summary Judgment. (Id., Document No. 39.) On December 2, 2013, Plaintiff filed her Response in Opposition. (Id., Document No. 47.) On December 3, 2013, the United States filed its Reply continuing to argue that it is entitled to summary judgment. (Id., Document No. 48.) By Proposed Findings and Recommendation entered on December 19, 2013, the undersigned recommended that the United States' Motion for Summary Judgment be denied. (Id., Document No. 49.) By Memorandum Opinion and Order entered on January 8, 2014, District Judge Faber adopted the undersigned's recommendation and denied the United States' Motion for Summary Judgment. (Id., Document No. 50.)

On March 21, 2014, the United States filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 67 and 68.) Specifically, the United States argues that "Plaintiff's claim must be dismissed because her injuries are considered *de minimis* under the FTCA." (Document No. 68, pp. 5 - 12.) The United States contends therefore that the District Court lacks subject matter jurisdiction. Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 21, 2014, advising her of the right to file a response to the United States' Motion to Dismiss. (Document No. 69.)

On May 5, 2014, Plaintiff filed her "Motion for Leave to Amend" requesting permission to amend her Complaint to include the following claims: (1) Excessive and Unnecessary Force; (2) Assault and Battery; (3) Intentional Infliction of Emotion Distress; (4) Negligent Infliction of Emotion Distress; and (5) Negligence. (Document No. 96.) In support, Plaintiff states that "circumstances have changed since Plaintiff's original pleading" because her "understanding has grown." (<u>Id.</u>)

On May 7, 2014, Plaintiff filed her Response in Opposition to the United States' Motion to Dismiss for lack of subject matter jurisdiction. (Document Nos. 102 and 103.) First, Plaintiff argues that there are issues of fact. (Document No. 103, p. 2.) Second, Plaintiff argues that her injuries are not *de minimis*. (<u>Id.</u>, pp. 3 - 5.) Plaintiff states that she suffered both physical and emotional injuries as a result of Officer Baynard's conduct. (<u>Id.</u>, pp. 3 - 4.) Plaintiff explains that she "did incur more than de minimis injury during this incident (January 28, 2008) and that fact is substantiated by medical records, affidavits, and reports." (<u>Id.</u>, p. 4.) Plaintiff states that she required "long term . . . treatment for medical and psychological injuries which she has substantiated." (<u>Id.</u>, p. 5.) Plaintiff argues that the declaration of William Trent, D.O., "is a restatement of evidence produced in

discovery riddled with misinterpretations, unfitting speculations, and extreme amount of irrelevant, redundant information." (Id.) Plaintiff notes that "Trent omits relevant information that might be beneficial to the Plaintiff that was contained on the same page as evidence he declares for the defense." (Id.) Plaintiff further claims that "Trent evidences his own lack of common knowledge toward spinal injuries." (Id.) Plaintiff states that she can prove that "whiplash, spinal injury, damaged tendons/muscles occurred during the incident." (Id.) Plaintiff alleges that "those injures had prominent impact on the development of Plaintiff's facet joint sclerosis, degenerative disc disease, arthritis in the cervical, thoracic and lumbar spine and impacted the development of Plaintiff's fibromyalgia." (Id.) Thus, Plaintiff contends her injuries were not *de minimis*. (Id.) Third, Plaintiff acknowledges that she had "surgery for a herniated disc in her back at L5/S1 in 2000 and has had three episodes of sciatica since then" and "signs of early onset of degenerative disc disease in her mid to lower back." (Id., p. 6.) Plaintiff, however, states that there was "no evidence of degenerative disc disease in [her] upper back or neck" and she never had "complaints in the neck/shoulder/arm/head area prior to the incident on January 28, 2008." (Id.) Plaintiff further argues that although she had complaints of "low back pain on most chronic care appointments, this does not equate to sciatica." (Id.) Plaintiff argues that "sciatica occurs when the sciatic nerve coming from your L5-S1 vertebrae is pinched in the hip socket and is felt going down your leg to the foot." (Id.) Plaintiff claims that sciatica "pain is excruciating and the symptoms are quite different than an everyday ache in your lower back." (Id.) Plaintiff contends that any degenerative disc disease "would act simply as a condition that caused the Plaintiff to become more susceptible to long term damage from whiplash, than she might have been without prior degenerative disc disease (Merrick statement)." (Id.) Furthermore, "Plaintiff admits to pre-existing mental health conditions as well."

11

(<u>Id.</u>, p. 7.) Plaintiff, therefore, requests that the Court deny the United States' Motion to Dismiss. (<u>Id.</u>)

As Exhibits, Plaintiff attaches the following: (1) A copy of a letter from Dr. Randolph V. Merrick, Assistant Clinical Professor of Family Medicine at the Virginia Commonwealth University (Document No. 107, pp. 5 - 6.); (2) A copy of pertinent pages from Plaintiff's Deposition (<u>Id.</u>, p. 7.); (3) A copy of Plaintiff's medical records dated January 28 and 29, 2008 (<u>Id.</u>, p. 8.); and (4) A copy of a letter dated March 6, 2014, from Dr. Jennifer Oldham (<u>Id.</u>, p. 9.).

In Reply, the United States argues that the Court should strike Dr. Merrick's report and grant its Motion to Dismiss. (Document No. 108.) Specifically, the United States argues that the "only factual opposition to the Motion is the letter from Dr. Merrick [and] [t]he court should strike this report because its disclosure is untimely." (<u>Id.</u>, pp. 1 - 3.) As Exhibits, the United States attaches the following: (1) A copy of pertinent pages of Plaintiff's Deposition (<u>Id.</u>, pp. 5 - 11.); (2) A copy of the "Notice to Take Deposition of Jean Elizabeth Kaufman and Request for Document" (<u>Id.</u>, pp. 12 - 14.); and (3) A copy of Plaintiff's "Response to United States Request for Documents at Deposition" (<u>Id.</u>, pp. 15 - 17.)

## SUMMARY OF MEDICAL RECORDS

Plaintiff's medical records reveal that prior to incarceration, she suffered from herniated disc and disc degeneration. Specifically, an MRI was conducted on March 7, 2000, which revealed "small disc herniations" at T11-T12, T-12-L1, L4-L5, L5-S1, "disc herniation" at L3-L4 that "compresses the thecal sac and compromises left lateral recess of spinal canal; and "evidence of early disc degeneration noted at T11-T-12, L3-L4, L4-L5, and L5-S1." (Document No. 67-1, pp. 24 - 25, 32 - 33.) On March 29, 2000, Plaintiff was evaluated by Dr. Ian Wattenmaker of Town Center

Orthopedic Associates in Leesburg, Virginia. (Id., p. 27.) Plaintiff noted no improvement in her condition and continued to complain of "severe pain in the right buttock, right posterior thigh, right posterior heel" and "paresthesias in the right foot and intermittent numbness in the right foot." (Id., p. 28.) Dr. Wattenmaker examined Plaintiff noting "ankle reflexes are absent bilaterally", "motor strength is 5/5," "marked positive right straight leg raising and marked positive right bow string test." (Id.) Dr. Wattenmaker's impression was "right S1 nerve root compression by the disc herniation." (Id.) On April 13, 2000, Plaintiff was treated surgically by Dr. Wattenmaker. (Id., p. 22.) Specifically, Dr. Wattenmaker performed a right L5-S1 hemilaminectomy and a right L5-S1 lateral discectomy. (Id.) On April 24, 2000, Dr. Wattenmaker saw Plaintiff for her postoperative follow-up noting that "[s]he is doing well" and "is having significantly less pain than she was having preoperatively." (Id., p. 26.)

During Plaintiff's "A&O Physical" at FPC Alderson conducted on November 6, 2005, it was noted that Plaintiff suffered from arthritis and other medical conditions. (Id., p. 55.) On December 16, 2005, Plaintiff reported to sick-call complaining of a pinched sciatic nerve. (Id., p. 53.) Plaintiff explained that the pain started "in the center of butt cheek on right side and goes all the way down to foot for two days." (Id.) Plaintiff was evaluated by RN Jennifer Piner and scheduled for a follow-up appointment on December 23, 2005. (Id., p. 54.) On December 20, 2005, Plaintiff submitted another sick-call request complaining of a pinched sciatic nerve. (Id., p. 51.) Medical staff evaluated Plaintiff on December 22, 2005, noting tenderness on right side L-S spine, straight leg raising right side possible, and no leg weakness. (Id., p. 50.) Medical staff ordered an x-ray of L-S spine, prescribed Naproxen for pain, and instructed Plaintiff to follow-up in two weeks. (Id.) Plaintiff's x-ray was conducted on January 5, 2006. (Id., p. 56.) The x-ray revealed "degenerative change with

degenerative disc disease" and "mild scoliosis." (Id.)

On October 18, 2007, Plaintiff reported to Health Services complaining of "sciatic nerve pinched," "numbness & tingling" in right lower extremity, and "right side and lower back" pain. (Id., p. 42.) Upon examination, it was noted that Plaintiff had a slow, guarded gait when walking. (Id.) Medical staff determined that Plaintiff was not in the need of medical treatment as she could "treat symptoms with over the counter medications from commissary." (Id., p. 43.)

On October 30, 2007, Plaintiff was evaluated by Dr. Rehberg. (Id., p. 45.) Plaintiff complained of extreme pain in back, right buttock to hip down leg to behind knee to heel and foot, foot is numb with sharp shooting pain, and unable to find relief. (Id.) Plaintiff rated her pain as a 10 on a scale to 10. (Id.) Plaintiff acknowledged that the cane helps with mobility. (Id.) Upon examination, Dr. Rehberg noted pain at right sciatic notch and right foot, positive pulse sensation intact, and pain with extensions of right leg. (Id.) Dr. Rehberg prescribed injections of 60 mg of Torodol, 80 mg DepMedrol, and 125 mg Solumedrol. (Id.) Plaintiff was issued a van pass and instructed to follow-up for a recheck in two weeks. (Id.)

On November 16, 2007, Plaintiff report to Health Services complaining that her back pain was a constant with sharp shooting pain. (Id., p. 44.) Plaintiff rated her pain as a 7 on a scale of 10. (Id.) Plaintiff indicated that Topamax and use of a cane helped her pain. (Id.) Plaintiff was "educated on medications and treatment" and instructed to return for a re-check in two weeks. (Id.)

On January 28, 2008, Plaintiff reported to Health Services after an "officer grabbed her by the shoulder and forced her to ground and placed knee into her back." (Id., p. 21.) Plaintiff rated her pain as a 4 on a scale of 10. (Id.) Following examination, medical staff noted right hip pain, lower back pain, right side pain, positive symptoms for spasms, good range of motion. (Id.) Medical staff

14

prescribed Naproxen for pain, ordered x-rays, and instructed Plaintiff to follow-up as needed. (Id.)

On January 29, 2008, Plaintiff reported to Health Services complaining of right arm and right side pain from neck to knee. (Id., p. 48.) Plaintiff was examined by RN McMillion, who noted that Plaintiff continued to have pain in right arm and shoulder, tenderness in the rib cage on left side, decreased range of motion in right upper extremity, and equal bi-carpal grip strength. (Id.)

On January 30, 2008, Plaintiff reported to Health Services complaining of "more bruising," "pain at base of skull 4/10, sore tender area worse with movement, hurts around neck with tenderness, tender left arm and elbow from shoulder to elbow, posterior muscle soreness 6/10 worse with movement and lifting, right groin hurts with walking pain goes up to 7/10, back is 'killing her,' hurts to breath or cough, spine hurts and back to lower hip 9/10, pain radiates around to front." (Id., p. 40.) Plaintiff further stated that her menses was "not due yet," but "has had dark brown spotting." (Id.) It was noted that Plaintiff was "tearful, but controlled." (Id.) Upon examination, PA Dana Renick noted decreased grip strength bilaterally, deep tendon reflexes intact, and bruises to right arm, left elbow, ribs, spine, back, and abdomen. (Id.) PA Renick educated Plaintiff on medications, ordered x-rays, and reported findings to captain or Lieutenant. (Id., p. 41.)

On January 31, 2008, Plaintiff reported to Health Services complaining of "increased bruising and pain." (Id., p. 38.) Plaintiff rated her pain as a 7 on a scale of 10. (Id.) Specifically, Plaintiff stated that the pain started at the based of her skull radiating down into shoulder and right hip, sniffiness is constant, shooting pain at times, and pain when taking deep breaths. (Id.) RM Billy McMillion noted decreased grip strength and bruising to back of upper right arm, left elbow, lower back, and right ribcage, and abdomen. (Id.) It was further noted that Plaintiff walked with a cane, which was order prior to alleged injury on January 28, 2008. (Id.) RN McMillion noted that Plaintiff

15

was referred to "Mrs. Renick for evaluation, then will talk to Lt. On where to go next." (Id., p. 39.) Plaintiff was transferred to SFF Hazelton later that day. (Id., pp. 57 - 59.)

On April 17, 2009, Plaintiff reported to sick call complaining of "pain in back of neck/left shoulder for past 2 years," "pins and needles sensation" in left arm and hand, and pain when reaching with her arm up or out. (Id., p. 36.) Plaintiff stated that there had been "no injury to her knowledge," but she has degenerative disc disease.[3] (Id.) Plaintiff was examined by PA Corbin, who noted that Plaintiff had a limited range of motion in her left shoulder" and "some limitation" with "neck rotation/lateral bending." (Id.) PA Corbin order a x-ray of the left shoulder and cervical spine and requested a consult with and orthopedist. (Id., p. 37.) Plaintiff's x-ray was conducted on April 24, 2009. (Id., p. 34.) The x-ray was "negative except for degenerative joint disease/disc disease." (Id.) On July 16, 2009, an additional x-ray of Plaintiff's cervical spine and shoulder was conducted. (Id., p. 35.) The x-ray was negative except for stable, mild degenerative disc disease. (Id.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare

---

[3] Although Plaintiff's medical records from April, 2009, indicate "[n]o injury to her knowledge," the record is unclear as to whether Plaintiff's response was to a question concerning a recent or past injury. (Document No. 67-1, p. 36.)

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a pro se Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

## **DISCUSSION**

**1.      Motion to Amend:**

In her "Motion for Leave to Amend," Plaintiff requests permission to amend her Complaint to include the following claims: (1) Excessive and Unnecessary Force; (2) Assault and Battery; (3)

Intentional Infliction of Emotion Distress; (4) Negligent Infliction of Emotion Distress; and (5) Negligence. (Document Nos. 93 and 96.) In support, Plaintiff states that "circumstances have changed since Plaintiff's original pleading" because her "understanding has grown." (Id.)

In Response, the United States argues that Plaintiff's Motion should be denied. (Document No. 111.) First, the United States contends that Plaintiff "provides no factual or legal basis for her claims." (Id., p. 1.) Next, the United States asserts that "Plaintiff provides no good cause to add additional claims to the matter." (Id., p. 2.) The United States notes that "[t]he present case is a mere weeks away from trial and discovery has been closed for almost a year." (Id.) The United States explains that "it is impossible for the United States to prepare a proper defense for such claims added at such a late date." (Id.)

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a party may amend his or her pleadings "once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] motion to amend should be denied only where it would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Marfork Coal Co. v. Smith, 2011 WL 744727 (S.D.W.Va. Feb. 23, 2011)(J. Berger)(citations omitted).

Based on a review of the record, the Court finds Plaintiff's "Motion for Leave Amend Complaint"should be denied. The Court finds that the proposed amendment would be prejudicial

to the United States. First, the parties have engaged in discovery, and discovery has been closed for approximately nine months. Second, the United States has filed dispositive motions in defense of the claims asserted in Plaintiff's initial Complaint. Third, trial is scheduled to begin in approximately three weeks (June 3, 2014). It would be prejudical to United States to allow Plaintiff to amend her claims at this point in the proceedings. Accordingly, the undersigned recommends that Plaintiff's "Motion for Leave to Amend" (Document No. 96.) be denied.

**2.      Request to Strike:**

In Response to the United States' Motion to Dismiss, Plaintiff references the opinion of her family physician, Dr. Randolph Merrick. (Document Nos. 102 and 107.) As an Exhibit, Plaintiff attaches a copy of a letter dated April 21, 2014, wherein Dr. Merrick states that he is currently treating Plaintiff for "chronic conditions including carpal tunnel syndrome, cervical radiculopathy, chronic low back pain, fibromyalgia and shoulder pain." (Document No. 107, pp. 5 - 6.) Dr. Merrick opines that the alleged assault "certainly could have exacerbated and possibly caused further damage to her already compromised arthritis and disk disease of her spine." (Id., p. 6.) Dr. Merrick also explains that Plaintiff possibly suffered a whiplash injury, which can lead to the development of fibromyalgia. (Id., pp. 5 - 6.)

In Reply, the United States requests that the District Court strike Dr. Merrick's report and grant its Motion to Dismiss. (Document No. 108.) Specifically, the United States argues that the Court "should strike this report because its disclosure is untimely."

For reasons set forth below, the undersigned finds that Plaintiff's medical records as provided by the United States establishes that Plaintiff's injuries were more than *de minimis*. Thus, the undersigned finds it unnecessary to consider Dr. Merrick's report for purposes of the Motion to

Dismiss. The decision as to whether Dr. Merrick's report will be admissible at trial will be governed by the District Court's ruling on the Motion in Limine.

**3.      Motion to Dismiss:**

Plaintiff asserts a claim under the Federal Tort Claims Act  [FTCA], 28 U.S.C. §§ 2671-2680. A plaintiff's FTCA claim must fit into one of the limited areas where Congress waived sovereign immunity. Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); also see Treasurer of New Jersey v. United States Department of Treasury, 684 F.3d 382 (3rd Cir. 2012)("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacity.") An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Specifically, the FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

There are, however, exceptions to the FTCA's waiver of sovereign immunity. Pertinent to the instant case, Section 1346(b)(2) provides as follows:

> No person convicted of a felony . . . while serving a sentence may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Although the FTCA does not define "physical injury," courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Calderson v. Foster, 2007 WL 1010383 (S.D.W.Va. March 30, 2007)(noting that 42 U.S.C. § 1997e(e) is a

related statute, which is not satisfied by a *de minimis* injury), aff'd, 264 FedAppx. 286 (4th Cir. 2008); also see Tsosie v. Bureau of Prisons, 2012 WL 4484935, * 4 (M.D.Pa. Sept. 27, 2012)(*de minimis* physical injuries "are insufficient to maintain a viable FTCA claim"); Owens v. United States, 2012 WL 6057126, * 5 (E.D.N.C. Dec. 6. 2012)("in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of the negligence" and must show that his injury is "more than *de minimis*"); Hornes v. United States, 2007 WL 1463028, * 11 (N.D.W.Va. May 17, 2007)(dismissing plaintiff's tort and constitutional claim for mental or emotional damages where plaintiff could not "show a physical injury or that his claim [was] more than *de minimis*"). A plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show that none of the FTCA's waiver exceptions apply." LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008), cert. denied, 555 U.S. 1170, 129 S.Ct. 1313, 173 L.Ed.2d 584 (2009).

In the instant case, Plaintiff seeks physical and emotional damages after Officer Baynard allegedly slammed her against the wall. The United States argues that Plaintiff's alleged injuries are *de minimis* because she suffered only bruising and aggravation of a pre-existing condition. *De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for." Perez v. United States, 330 Fed.Appx. 388, 389 (3rd Cir. 2009); also see Hill v. Crum, 727 F.3d 312 (4th Cir. 2013)(citations omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); Chavero-Linares v. Smith, 2013 WL 5655559 (N.D. Iowa Oct. 15, 2013)("a relatively minor scratch or cut and cheek pain, even if this cheek pain was ongoing, is still *de minimis* as a

matter of law because [plaintiff] suffered no serious long-term pain and received no medical attention for her injury"); Karavias v. Virginia, 2013 WL 3879701, * 4 (W.D.Va. July 26, 2013)(indicating that plaintiff's bruises and scrapes were *de minimis*); Sublet v. United States, 2011 WL 690533, * 3 (W.D.La. Jan. 28, 2011)(finding a bruise to be *de minimis*), aff'd, 451 Fed.Appx. 458 (5th Cir.), cert. denied, ___ U.S. __, 132 S.Ct. 1961, 182 L.Ed.2d 788 (2012); Homen v. United States, 2002 WL 844347 (S.D.N.Y. May 2, 2002)(finding a three-centimeter abrasion that required only minor first aid, "one or two Tylenols," no difficulty sleeping, and no problem going about his daily routine *de minimis*). Physical pain alone is insufficient to constitute more than a *de minimis* injury. See Calderson, 2007 WL 1010383 at * 8(citation omitted)(physical pain alone is a *de minimis* injury that may be characterized as a mental or emotional injury); Shields v. United States, 2010 WL 2803399 (N.D.N.Y. July 15, 2010)("If plaintiff's injury is *de minimis*, he is not entitled to compensation for pain and suffering."), aff'd, 446 Fed.Appx. 325 (2nd Cir. 2011). Finally, the temporary aggravation of a pre-existing condition is a *de minimis* injury. See Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006)(finding minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition to be *de minimis* injuries); Jones v. FCI Beckley Medical Employees, 2013 WL 530861 (S.D.W.Va. January 11, 2013)(finding a forearm contusion and the alleged aggravation of a prior "disc condition" to be *de minimis* where plaintiff's medical records revealed full range of motion, equal strength in bilateral extremities, and no evidence of restriction to daily activities); McKinney v. United States, 2013 WL 4050146 (N.D.Tex. Aug. 9, 2013)(finding lower back pain and minor abrasions to the elbow to be *de minimis* where plaintiff had full range of motion and no evidence of a back injury, other than plaintiff's pre-existing disc degeneration).

Based upon a review of the record, the undersigned finds that Plaintiff has put forth enough

evidence to overcome the 28 U.S.C. § 1346(b)(2) "physical injury" requirement. Although a temporary and slight aggravation of a pre-existing condition is considered *de minimis*, Plaintiff appears to have suffered more than a slight and temporary aggravation of her pre-existing degenerative disc disease. Plaintiff's medical records reveal that she suffered bruising to multiple areas of her body and pain in her lower back, left rib cage, left shoulder, left elbow, right hip, right arm, right shoulder, and neck. (Document No. 67-1, p. 39 - 40, 48.) Plaintiff had a decreased range of motion in her right upper extremity and decreased grip strength bilaterally. Plaintiff was prescribed Naproxen for pain and it was noted that Plaintiff was "tearful" upon examination two days after her injury. The record reveals that in April, 2009, Plaintiff continued to have a decreased range of motion and suffered from pain in her back, neck, left arm, and left shoulder.[4] Thus, the record reveals that Officer Baynard's use of force may have caused a chronic aggravation of Plaintiff's pre-existing condition. Plaintiff's medical records reveal that Plaintiff had no complaints of neck, shoulder or arm pain prior to Officer Baynard's use of force on January 28, 2008. The x-ray of Plaintiff's shoulder revealed degenerative joint disease. A possible cause of degenerative joint disease is an injury to a joint. Accordingly, the undersigned finds that Plaintiff's alleged injuries were more than *de minimis*. See Copeland v. Locke, 613 F.3d 875 (8th Cir. 2010)(Finding lacerations

---

[4] Although Medical Director Trent notes that "it may appear there are gaps in [Plaintiff's] medical record," he states that "I have intentionally not discussed any medical issues unrelated to injury and/or pain." (Document No. 67-1, p. 1.) The undersigned notes, however, that it appears pertinent medical records may be missing from the record. Based on the medical records submitted, it appears that Plaintiff had no complaints of back, shoulder, or neck pain between January 31, 2008, and April 2009, and between April, 2009, and July, 2009. The medical records reveal, however, that x-rays of the cervical spine and shoulder were ordered in April, 2009, due to *chronic* pain and limitation of motion. (Document No. 67-1, p. 37.) Although there are no medical records revealing continued complaints of pain from between April, 2009 and July 2009, x-rays of the cervical spine and shoulder were performed in July, 2009. (*Id.*, pp. 35 and 37.) It is unlikely that additional x-rays would have been conducted in July, 2009, absent continued complaints of pain.

from handcuffs and "chronic injury" to knee was more than a *de minimis* injury); Perez, 330 Fed.Appx. at 389(the court determined that there was a genuine issue of material fact as to whether plaintiff's injuries were *de minimis* because his "symptoms associated with his asthma attack were of such a severity that he needed steroids, prescription medicine, and other medical treatment to recover"). Based on the foregoing, the undersigned finds that Plaintiff's has put forth enough evidence to overcome the "physical injury" requirement set forth in Section 1346(b)(2) and the United States's Motion to Dismiss (Document No. 67.) should be denied.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** the United States' Motion to Dismiss (Document No. 67.), and **DENY** Plaintiff's "Motion for Leave to Amend" (Document Nos. 93 and 96.).

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber

and this Magistrate Judge.

      The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

      Date: May 14, 2014.

R. Clarke VanDervort
United States Magistrate Judge