IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JEAN ELIZABETH KAUFMAN,

     Plaintiff,

v.                              CIVIL ACTION NO. 1:12-0237

UNITED STATES OF AMERICA,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

A bench trial in the above-styled case was held on June 24–25, 2014.[1]  Having reviewed the case, the court concludes that the United States has not waived its sovereign immunity to suit under the Federal Tort Claims Act ("FTCA") with regard to plaintiff's claims.  Without such a waiver, this court does not have subject-matter jurisdiction over the controversy.  Accordingly, plaintiff's complaint, (Doc. No. 4), is DISMISSED.

---

[1] Because this case was tried before the court as a bench trial, the court's findings are presumed to be based on admissible evidence.  Fishing Fleet, Inc. v. Trident Ins. Co., Ltd., 598 F.2d 925, 929 (5th Cir. 1979); see also Chicago Title Ins. Co. v. IMG Exeter Assoc. Ltd. P'ship, 985 F.2d 553, 1993 WL 27392, at *4 (4th Cir. 1993) (unpublished); see also Harris v. Rivera, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.").  Accordingly, the court finds it unnecessary to rule on each separate objection raised by the parties.  The court has considered those objections relating to the evidence supporting the findings contained herein and, to the extent such objections relate to the evidence which the court cites in support of its findings, such objections are hereby overruled.

## I.    Factual Background and Procedural History

The instant dispute arises out of an incident that occurred
at Federal Prison Camp Alderson ("FPC Alderson") on January 28,
2008, where plaintiff was incarcerated at the time.  At
approximately noon on the day in question, plaintiff was waiting
in line for lunch at the facility's dining hall.  (Doc. No. 153-
1 at 18).  Senior Officer Harrison Baynard, Jr., a member of FPC
Alderson's staff, was monitoring the lunch line and reprimanded
another inmate, Brandy Stevens, for entering the dining hall
through an exit door.  (Doc. No. 153-1 at 18).  Officer Baynard
sent Stevens out of the dining hall and directed her to re-enter
through the correct door.  (Doc. No. 153-1 at 14).  When Stevens
resumed her place in the lunch line, plaintiff remarked to
Stevens, sarcastically, "That was real important," referring to
Officer Baynard's instruction to Stevens.  (Doc. No. 153-1 at
14, 18).

Officer Baynard overheard plaintiff's comment and ordered
her to approach him.  (Doc. No. 153-1 at 14).  He instructed
plaintiff to refrain from making comments that would hinder the
authority of FPC Alderson staff.  Id.  Plaintiff responded that
she was not talking to him when she made the remark and that her
civil and First Amendment rights allowed her to say whatever she
chose.  Id.  The two began to argue and Officer Baynard ordered

plaintiff to follow him outside of the dining hall and surrender her identification card.  Id.  According to Officer Baynard, he wanted to address plaintiff outside the presence of other inmates.  Id.

Plaintiff and Officer Baynard present different accounts of what happened next.  Plaintiff contends that, once they were outside, Officer Baynard screamed obscenities at her while she quietly asked him to stop.  (Doc. No. 153-1 at 18).  Officer Baynard maintains that plaintiff continued to argue with him about her constitutional rights and escalated the situation. (Doc. No. 153-1 at 15).  He denies cursing at plaintiff.  Id.

However, the parties agree that, at some point during the interaction, Officer Baynard ordered plaintiff to put her hands on the wall and submit to a pat search.  (Doc. No. 153-1 at 15, 18).  Both parties agree that, during the pat search, plaintiff began to turn around when Officer Baynard touched her right jacket pocket.  Id.  In plaintiff's version of events, Officer Baynard then "slam[med her] into the wall repeatedly," face-forward, while she yelled "I want to see the Captain; I don't want to deal with you!"  (Civil Action No. 1:10-cv-0071, Doc. No. 1; Doc. No. 38 at 2–3).  Plaintiff maintains that Officer Baynard "grabbed [her] arm and neck and . . . slung [her] to the ground approximately six feet away from the building."  (Civ.

3

Action No. 1:10-0071, Doc. No. 1).  According to plaintiff,
Officer Baynard then "planted his knee in [her] back, dropping
his full weight upon [her]."  Id.

According to Officer Baynarad, after plaintiff took her
right hand from the wall, he attempted to place her hand back on
the wall, but plaintiff resisted.  (Doc. No. 153-1 at 15).
Plaintiff began flailing her arms, and again tried to turn
around.  Id.  Officer Baynard stated that he was concerned about
plaintiff's intentions and "was trying to be more defensive with
her than offensive."  Id.  While plaintiff kept trying to move
away from him, he attempted to restrain her.  Id.  Though he
initially attempted to pin plaintiff to the wall, she continued
to flail her arms and he decided to place her on the ground.
Id.  According to Officer Baynard, as plaintiff attempted to
move away from him, her momentum caused her to fall, and, as a
result, he did not need to use extreme measures to place
plaintiff on the ground.  (Doc. No. 153-1 at 15-6).  As
plaintiff laid face down, Officer Baynard contends that she was
"flinging her arms and legs around" in an attempt to turn over
onto her back.  (Doc. No. 153-1 at 16).  He took hold of her
hands and placed them behind her back.  Id.

The parties agree that plaintiff continued to shout
throughout the incident.  (Doc. No. 153-1 at 16, 18).  Plaintiff

contends that she yelled "[Y]ou didn't even warn me, you're not supposed to touch me, I want to see the Captain, don't touch me." (Doc. No. 153-1 at 18). Officer Baynard contends that plaintiff yelled "Don't touch me. Anyone can touch me but him!" (Doc. No. 153-1 at 16). In all, Officer Baynard estimates that the entire incident lasted twenty seconds before other FPC Alderson staff members arrived, having heard the commotion. Id.

Upon the arrival of support staff, Officer Baynard stepped back from plaintiff as other staff members helped her to her feet. (Doc. No. 153-1 at 16, 18). Captain Vicky Dupuis, who responded to the incident, saw plaintiff "turn[ ] and scream[ ] towards Officer Baynard . . . 'Don't let him touch me!'". (Doc. No. 153-2 at 3). Captain Dupuis then took plaintiff to her office. Id.

After making a statement, plaintiff was examined by FPC Alderson's medical staff and released back to her housing unit. (Doc. No. 153-1 at 18). Officer Baynard also reported to Health Services for an injury assessment after the incident. (Doc. No. 153-1 at 16). Medical staff noted that plaintiff suffered lower back pain and a back spasm as a result of the incident, while Officer Baynard did not sustain any injuries. (Doc. No. 153-2 at 5, 22, 23).

5

Almost immediately, FPC Alderson administrators began conducting an internal investigation of the incident. (Doc. No. 153-2 at 5). After speaking with plaintiff, Captain Dupuis interviewed Officer Baynard and contacted a Correctional Services Administrator. Id. When asked whether Officer Baynard's immediate use of force was justified, Captain Dupuis responded that it was. Id.

Two days after the incident, plaintiff asserted that she had bruising on her body that she wished to document. Id. As all female medical staff members were unavailable, Captain Dupuis photographed plaintiff. Id. She noted "bruising to [plaintiff's] left elbow, the right triceps area, 1 small bruise to her upper back, a large bruise to her right lower back, and an abrasion to her right forearm." Id.

Anthony Hussion of the Office of Internal Affairs investigated the incident. (Doc. No. 153-1 at 8). After interviewing both inmates and FPC Alderson staff members, Hussion's investigation revealed insufficient evidence to substantiate plaintiff's claim of excessive force. (Doc. No. 153-1 at 11). Hussion noted that FPC Alderson staff who responded to the incident did not observe Officer Baynard use excessive force and "no other facts presented" indicated excessive force. Id. For her part in the incident, plaintiff

was convicted of violating Rule 307, Refusing to Obey an Order of Any Staff Member.  (Doc. No. 38 at 3).

On January 25, 2010, plaintiff filed a claim pursuant to 42 U.S.C. § 1983 and the FTCA.  (Civil Action No. 1:10-cv-0071, Doc. No. 1).  Plaintiff's § 1983 claim was later recharacterized as a Bivens claim and dismissed.  This court dismissed plaintiff's initial FTCA claim as premature because she failed to exhaust her administrative remedies.  After plaintiff exhausted these remedies, she resubmitted her FTCA claim and initiated the instant action.

In this action, plaintiff asserts two claims pursuant to the FCTA.  First, plaintiff alleges that Officer Baynard assaulted and battered her during the above-described incident, from which she suffered "possible permanent injury" as well as exacerbated pre-existing PTSD symptoms.  Second, plaintiff asserts a negligence claim; specifically, that FPC Alderson officials knew that Officer Baynard had a history of acting inappropriately with female inmates but failed to protect inmates from him.  The court will discuss each of these claims in turn.

## II. Plaintiff's Claim of Assault and Battery Under the FTCA

### A. The Discretionary Function Exception and Law Enforcement Officers

By bringing suit pursuant to the FTCA, plaintiff asserts a claim against the United States, arguing that the Government is responsible for Officer Baynard's alleged acts. As a sovereign, the United States enjoys immunity from suits unless Congress expressly waives that immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941). Without a waiver of sovereign immunity, a court does not have subject-matter jurisdiction to adjudicate a case. Id. at 587-88 (citing Luckenbach S.S. Co. v. United States, 272 U.S. 533, 536 (1926)).

For those plaintiffs asserting tort claims against the Government, Congress issued a limited waiver of sovereign immunity in the FTCA. Under this statute, the United States waives sovereign immunity for claims of "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (2012). Thus, the FTCA allows a plaintiff to hold the Government liable in tort in the same way he or she could hold a private person liable. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

8

However, the FTCA's waiver of sovereign immunity is narrow and subject to a number of exceptions, with the majority codified in 28 U.S.C. § 2680.  The most important of these exceptions, the discretionary function exception, is codified in subsection (a).  Under this exception, the waiver of sovereign immunity does not extend to a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a) (2012).  As a result, a court lacks subject-matter jurisdiction to adjudicate a claim where a Government actor performed a discretionary function or duty that resulted in tortious conduct.

Furthermore, subsection (h) of § 2680 carves out an exception for intentional torts, as well.  Pursuant to subsection (h), the waiver of sovereign immunity does not extend to intentional torts, including assault and battery.  Therefore, a court does not have subject-matter jurisdiction when a plaintiff claims a Government actor committed an intentional tort against him or her.

But the FTCA treats law enforcement officers and investigators differently.  While the first portion of § 2680(h) bars intentional tort claims, later in the same sentence, the

statute allows a plaintiff to bring a claim against a law
enforcement officer or investigator alleging:  assault, battery,
false imprisonment, false arrest, abuse of process, or malicious
prosecution.  And, this exception covers law enforcement
officers and investigators as governmental actors, rather than
their duties:  the Government may be held liable when a law
enforcement officer commits a tort outside of the scope of his
employment, even if it had nothing to do with law enforcement or
investigation.  See Ignacio v. United States, 674 F.3d 252, 253
(4th Cir. 2012).

Courts have struggled to reconcile the law enforcement
carve-out codified in section 2680(h) with the blanket
exceptions codified in section 2680(a).  Should courts read
subsection (h) separately from subsection (a), meaning that a
claim brought under subsection (h) is not subject to the
discretionary function exception and a court always has subject-
matter jurisdiction?  Or should courts read the two subsections
in conjunction with each other, meaning that a claim brought
under subsection (h) is first subject to the discretionary
function exception of subsection (a), and a court must determine
whether the United States has waived sovereign immunity?

In Medina v. United States, the Fourth Circuit concluded
that courts must read the two subsections together.  259 F.3d

220, 226 (4th Cir. 2001).  Medina, a diplomat, was indicted on a number of charges, including attempted rape, burglary, and simple assault and battery.  Id. at 222.  Although he was acquitted on all charges except simple assault and battery, INS officials arrested Medina and initiated deportation proceedings. Id.  After the INS terminated these proceedings, Medina filed a claim pursuant to the FTCA, claiming assault and battery, false arrest, malicious prosecution, and infliction of emotional distress in conjunction with his arrest.  Id. at 223.

In the decision, the Fourth Circuit concluded that a plaintiff who alleges an intentional tort against a law enforcement officer or investigator pursuant to § 2680(h) must first clear the discretionary function hurdle codified in § 2680(a).  Id. at 222, 226.  Medina argued that INS agents committed assault and battery against him, in violation of state law, and that he could hold the United States responsible for these violations of state law.  Id. at 225.  But the court found that "the very purpose of the § 2680(a) discretionary function exemption is to immunize certain agency conduct that might violate state law."  Id. at 225–26.  Therefore, actions that underlie a plaintiff's intentional tort claim under § 2680(h) that are authorized by federal law "may be considered discretionary functions under § 2680(a), even if they would

11

otherwise constitute actionable torts under state law."  Id. at
226.  As a result, the FTCA exceptions codified in § 2680(a)
apply to § 2680(h) and any intentional tort claim against law
enforcement officers or investigators.

After examining the INS agents' conduct under the
discretionary function analysis, the court determined that the
exception encompassed their actions.  Id. at 226–29.  Because
the discretionary function exception applied, the United States
had not waived sovereign immunity and the district court did not
have subject-matter jurisdiction over the case.  Id. at 229.  As
a result, the Fourth Circuit remanded the case to the district
court with instructions to dismiss the case for lack of subject-
matter jurisdiction.  Id. at 222.

In light of Medina, plaintiff's intentional tort claim
presents two questions:  1) whether her claim is subject to the
discretionary function exception; and 2) if so, whether the
discretionary function exception applies to deprive this court
of subject-matter jurisdiction.

### B.   Analysis of Plaintiff's Intentional Tort Claim Against a Law Enforcement Officer

The court begins its analysis by acknowledging that neither
party has argued that this court lacks subject-matter

12

jurisdiction pursuant to any exception under the FTCA.[2]  This
does not mean that the court should not analyze subject-matter
jurisdiction sua sponte.  "[C]ourts . . . have an independent
obligation to determine whether subject-matter jurisdiction
exists, even in the absence of a challenge from any party."
Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citing Ruhrgas
AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)).

Indeed, courts cannot assume that subject-matter
jurisdiction exists.  See In re Bulldog Trucking, 147 F.3d 347,
352 (4th Cir. 1998) ("It is a fundamental precept that federal
courts are courts of limited jurisdiction, constrained to
exercise only authority conferred by Article III of the
Constitution and affirmatively granted by federal statute.")
(internal quotations omitted).  And, to determine whether
subject-matter jurisdiction exists, the court is not limited to
a plaintiff's complaint.  Luckett v. Bure, 290 F.3d 493, 496-97
(2d Cir. 2002) ("In resolving the question of jurisdiction, the
district court can refer to evidence outside the pleadings and
the plaintiff asserting subject-matter jurisdiction has the
burden of proving by a preponderance of the evidence that it

---

[2] The court notes that the Government moved the court to dismiss
the case for lack of subject-matter jurisdiction based on
plaintiff's failure to timely file her administrative claim.
(Doc. No. 8).  The court accepted Magistrate Judge VanDervort's
proposed findings and recommendation and denied the Government's
motion.  (Doc. No. 19).

exists.") (internal quotations omitted); see also Richmond,
Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d
765, 768 (4th Cir. 1991).  Therefore, before deciding the merits
of plaintiff's case, the court must determine whether it has
power to adjudicate the case and need not limit itself to
plaintiff's complaint to reach its conclusion.

Under Medina, a plaintiff must overcome the discretionary
function hurdle before the court can reach the merits of any
intentional tort claim against a law enforcement officer or
investigator.  In this case, plaintiff claims under § 2680(h)
that a corrections officer committed an intentional tort against
her.  Corrections officers are law enforcement officers within
the meaning of the statute.  Calderon v. Foster et al., 2007
WL1010383, Civil Action No. 5:05-cv-00696 at *16 (S.D.W. Va.
Mar. 30, 2007) (citing Ortiz v. Pearson, 88 F. Supp. 2d 151, 164
(S.D.N.Y. 2000)).  Therefore, plaintiff must first clear the
discretionary function exception of § 2680(a) in order for this
court to find that the United States has waived sovereign
immunity.  If the court finds that Officer Baynard's act was a
discretionary function or duty, the court must dismiss her claim
against the United States for lack of subject-matter
jurisdiction.

14

### C.    Application of the Two-Part Discretionary
###         Function Exception Test

Having determined that plaintiff's claim is subject to the
discretionary function exception, the court next analyzes
whether plaintiff's claim is based upon Officer Baynard's
exercise of a discretionary function or duty.  The Supreme Court
has outlined a two-part test to ascertain whether the
discretionary function exemption applies.  First, a court must
determine whether the governmental action at issue "involves an
element of judgment or choice."  Berkovitz v. United States, 486
U.S. 531, 536 (1988).  If the action is "the subject of any
mandatory federal statute, regulation, or policy prescribing a
specific course of action," then the governmental actor must
adhere to the directive and the action does not involve an
element of choice.  Baum v. United States, 986 F.2d 716, 720
(4th Cir. 1993).  If there is a mandatory directive on point,
the plaintiff must show that the governmental actor failed to
adhere to this standard.  Id. (citing Berkovitz, 486 U.S. at
530).

However, if no mandatory directive exists, the court
proceeds to the second prong of the two-part test.  Under the
second prong, a court must determine whether the challenged
action is one "based on public policy considerations."
Berkovitz, 486 U.S. at 531.  In this analysis, a court focuses

15

on "the nature of the actions taken and on whether they are susceptible to policy analysis," rather than "the agent's subjective intent in exercising the discretion."  United States v. Gaubert, 499 U.S. 315, 325 (1991).  The Fourth Circuit has interpreted "public policy" broadly, covering everything from the INS's decision to initiate deportation proceedings in Medina to the National Park Service's decisions regarding bridge and guardrail maintenance.  See Baum, 986 F.2d at 724.  Notably, the absence of a mandatory directive creates a presumption that the discretionary function exception applies:  "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  Gaubert, 499 U.S. at 324.

The court finds that the first prong of the two-part test is satisfied because Officer Baynard's actions involved an element of choice and were not subject to a mandatory directive. Unsurprisingly, a number of regulations relate to conduct in federal prisons.  The court notes, initially, that the BOP has a mandatory duty to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(3) (2012).

However, courts recognize that this regulation does not set forth the manner in which BOP officials must fulfill this duty, instead leaving it to BOP officials' discretion.  <u>See</u> <u>Carter v. United States</u>, 57 F. App'x 208 (4th Cir. 2003) (unpublished); <u>Calderon v. United States</u>, 123 F.3d 947, 950 (7th Cir. 1997).

In this case, two separate regulations address the conduct at issue.  Title 28 of the Code of Federal Regulations, section 555.20 allows correctional officers to use force when deemed necessary, providing:

> The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed.  When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order.

(2014).  Furthermore, 28 C.F.R. § 552.22 regulates the amount of force a corrections officer may use on an inmate:

> Staff shall use only that amount of force necessary to gain control of the inmate.  Situations when an appropriate amount of force may be warranted include, but are not limited to:
>   1) Defense or protection of self or others;
>   2) Enforcement of institutional regulations; and
>   3) The prevention of a crime or apprehension of one who has committed a crime.

(2014).  These regulations do not prescribe a course of conduct, but instead allow BOP staff to determine when force is necessary and the appropriate extent of that force, taking into account

17

the circumstances of each specific situation.  Consequently,
Officer Baynard's actions fell under these regulations and
involved an element of choice.

In this case, plaintiff violated FPC Alderson rules by
displaying insolence toward Officer Baynard,[3] and plaintiff was
convicted for her refusal to obey Officer Baynard's orders.
Both parties agree that plaintiff made a sarcastic comment about
Officer Baynard's order to another inmate.  The two argued and,
although she initially submitted, plaintiff began to resist
while Officer Baynard conducted a pat-down search.[4]

Officer Baynard attested in his affidavit that he grew
concerned about plaintiff's intentions.  He attempted to diffuse
the situation by first removing plaintiff from other inmates,
then placing her hand back on the wall himself after plaintiff
refused his order to do so.  Plaintiff threw her arms into the

---

[3] 28 C.F.R. § 541.3 enumerates acts prohibited in a federal
correctional facility.  Listed within the "Moderate Severity
Level Prohibited Acts," at #312, an inmate may not display
insolence toward a staff member.

[4] The court notes that the evidence does not support plaintiff's
contention that Officer Baynard repeatedly "slammed" her, face-
forward, against the wall.  The Investigation Report and
photographs provided by plaintiff evidence bruising on
plaintiff's lower back, the back of her right arm, and an
abrasion on her right forearm.  However, aside from a small
bruise to her abdomen no larger than a quarter, plaintiff has
provided no evidence that Officer Baynard injured her front
torso, face, or hands.  Indeed, while plaintiff complained of
back injuries in the days after the incident, she made no
complaints of injuries to her front.

air and screamed at Officer Baynard.  Accordingly, 28 C.F.R. §
552.20 granted Officer Baynard the discretion to determine that
force was appropriate and 28 C.F.R. § 552.22 granted Officer
Baynard discretion to determine the necessary force to bring
plaintiff back under control.  The court notes that Captain
Dupuis agreed with Officer Baynard's determination that the use
of force was appropriate in the situation and the Office of
Internal Affairs' investigation yielded insufficient evidence of
excessive force.  Therefore, the court concludes that Officer
Baynard's actions fall within the first prong of the two-part
discretionary function test.

Notably, the court need not determine whether Officer
Baynard abused his discretion.  Under the statutory language of
§ 2680(a), even when a governmental actor abuses his or her
discretion, the discretionary function exception still applies.
28 U.S.C. § 2680(a) (2014); see also Calderon v. Foster et al.,
2007 WL 1010383, Civil Action No. 5:05-cv-00696 at *6.  While
the court has not determined that Officer Baynard abused his
discretion, even if he did, the discretionary function exception
nevertheless would shield the Government from liability.

The court finds that the second prong of the discretionary
function test is satisfied, as well, because Officer Baynard's
decision implicates public policy.  The treatment of inmates in

19

federal custody inherently involves public policy considerations.  A BOP corrections officer makes hundreds of decisions daily regarding the safety and welfare of inmates and prison staff, as well as his or her own safety and welfare. Corrections officers must assure inmates' safety, and sometimes must do so by force.  Yet they may only use force when appropriate and may not use excessive force.

As described above, upon a finding that the first prong is satisfied, a presumption arises that the second prong is also satisfied.  Pursuant to Gaubert, as the court has determined that an established regulation allowed Officer Baynard to exercise his discretion, the court must presume that his act was grounded in policy considerations.  Consequently, the court finds that the second prong of the discretionary function test is satisfied.

This court has faced a similar set of facts previously and, again, concluded that the discretionary function exception prevented a plaintiff from raising an intentional tort claim against a corrections officer.  In Calderon v. Foster et al., the plaintiff, a prisoner at FCI Beckley, alleged that a corrections officer battered him when he kicked the plaintiff's cell door.  2007 WL 1010383, Civil Action No. 5:05-cv-00696 at *1 (Johnston, J.); aff'd 264 F. App'x 286 (4th Cir. 2008)

20

(unpublished).   The district court found that the BOP's
regulations regarding disciplinary action covered the
corrections officer's act.   Id. at *6.  As a result, the court
found that the discretionary function exception applied to bar
plaintiff's FTCA complaint.   Id. at *9.  The same reasoning
applies to the instant case.

Importantly, the court in Calderon noted that Congress
enacted the discretionary function exception to shield exactly
the type of conduct at issue.   Id.  The Fourth Circuit has
stated that the second prong "exists because the very purpose of
the discretionary function exception is to prevent judicial
'second-guessing' of administrative decisions grounded in social
and political policy."  Medina, 259 F.3d at 228.  In this case,
Officer Baynard faced an inmate who repeatedly resisted as he
conducted a pat search and, by her own admission, shouted at him
throughout their encounter.  The second-prong of the
discretionary function exception prevents the court from acting
as a "Monday morning quarterback" to determine whether Officer
Baynard, who had mere seconds to settle on the appropriate
course of action, should have used less force than he did to
gain control of plaintiff.

Therefore, the court finds that it does not have subject-
matter jurisdiction over plaintiff's claim that Officer Baynard

assaulted and battered her.  While this result may seem severe, it is important to note that an FTCA claim seeks to hold the Government responsible for the acts of its employees.  Plaintiff does not bring suit against Officer Baynard.  She brings suit against the United States.  The statutory scheme of the FTCA excludes claims arising from a number of circumstances and plaintiff's case falls squarely within these omissions. Consequently, the court must dismiss plaintiff's intentional tort claim under the FTCA.

**III. Plaintiff's Negligent Supervision Claim Under the FTCA**

Plaintiff brings a second claim under the FTCA related to the incident on January 28, 2008:  that the Government is responsible for BOP officials' alleged negligent supervision of Officer Baynard.  Plaintiff claims that officials at FPC Alderson were aware that Officer Baynard had a history of acting inappropriately with female inmates and failed to supervise him properly.[5]

However, this claim as well falls within the discretionary function exception.  Courts in the Fourth Circuit have long held that decisions regarding supervision of employees fall within the discretionary function exception.  See Suter et al. v. United States, 441 F.3d 306, 312 n.6 (4th Cir. 2006); LeRose v.

---

[5] Neither plaintiff's complaint nor the evidence she presented at trial substantiate her claim.

United States, 285 F. App'x. 93, 97 (4th Cir. 2008)

(unpublished); Cash v. United States, 2012 WL 6201123, Civ. No.

WDQ-12-0563, at *10 (D.Md. Dec. 11, 2012).

The BOP's decision to hire and retain officer Baynard, as well as its supervision of him, involve elements of judgment and choice.  These decisions implicate public policy because they involve weighing competing candidate qualifications, determining staffing requirements, and evaluating Officer Baynard's performance.  Decisions such as these fall squarely within the discretionary function exception.  See LeRose, 285 F. App'x at 97.  Consequently, the court cannot exercise subject-matter jurisdiction over this claim either, and must dismiss it as well.

**IV.  Conclusion**

While neither party asserts that this court does not have subject-matter jurisdiction over this case, the court has an independent duty to ensure that subject-matter jurisdiction exists.  Having conducted a review of the case and the FTCA, the court concludes that the United States has not waived its sovereign immunity.  As a result, the court does not have subject-matter jurisdiction over plaintiff's claims.  Accordingly, plaintiff's complaint, (Doc. No. 4), is **DISMISSED**.

All motions related to trial (Doc. Nos. 88, 89, 94, 95, 97, 98, 99, 101, 109, 115, 124, 136) are hereby **DENIED** as moot.

The Clerk is **DIRECTED** to remove the case from the court's active docket and to send copies of this Order to plaintiff, pro se, and all counsel of record.

**It is SO ORDERED** this 7th day of January, 2015.

ENTER:

David A. Faber
Senior United States District Judge